## Sterrett's Petition.

*Sheriffs—Rights and duties—Incompatible offices—Appointment by Federal Government—Executive order of President—Constitutional law.*

1. Under article xii, section 2, of the Constitution of Pennsylvania, relating to incompatible offices, the sheriff cannot hold or exercise any office of trust or profit under the Federal Government.

2. Under an executive order of the President of the United States, a sheriff in Pennsylvania cannot be appointed as prohibition officer of the Treasury Department to enforce the provisions of the National Prohibition Act.

3. If a sheriff, who has been appointed under the executive order of May 8, 1926, resigns, he is ineligible to act as an officer of the Federal Government, inasmuch as he would not then be a state, county or municipal officer of the State, as provided by such order.

*Uniform declaratory judgment—Defining rights and duties of sheriff—Act of June 18, 1923.*

4. Under the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, the courts may declare the rights, duties and status of a sheriff in relation to his enforcement of law under an executive order of the President of the United States.

Petition for declaratory judgment. C. P. Erie Co., Sept. T., 1926.

C. E. Royer, for petitioner.

ROSSITER, P. J., Aug. 3, 1926.—Thomas Garfield Sterrett, Sheriff of Erie County, has filed his petition with the court, setting forth that, as sheriff of said county, he desires the advice of the court in the form of a declaratory judgment or decree declaring, defining and setting forth the rights, powers, duties, status and other legal relations of the sheriff with respect to the enforcement of the laws of the Commonwealth of Pennsylvania and the United States of America and the conservation of the public peace within the county, and prays that such declaratory judgment or decree be duly recorded pursuant to the Act of the General Assembly of the Commonwealth of Pennsylvania, approved June 18, 1923, P. L. 840.

The Act of June 18, 1923, P. L. 840, declares that the courts of record within their respective jurisdictions shall have power to declare rights, status and other legal relations, whether or not further relief is or could be claimed; the declaration may be either affirmative or negative in form, and in section 5 it is provided that the exercise of the general powers conferred in section 1 in any proceedings where declaratory relief is sought is not restricted by others enumerated in the act.

What the sheriff desires to know is not only what his duties are relative to the enforcement of the laws of the Commonwealth of Pennsylvania, but particularly what those duties are relative to the enforcement of the law under the recent executive order of the President of the United States of America.

### Sterrett's Petition.

It is with some misgivings that we enter upon the enumeration of some of the rights and duties of the sheriff, and, were it not for the recent executive order of the President of the United States, we might conclude that the Declaratory Judgments Act did not apply; but we are of the opinion that the sheriff has a right to have his duties defined under that order, and those duties, or lack of them, under that order being so well settled in this State, it may not be amiss to enumerate what some of the primary duties of the sheriff are, all of which are as old as the office itself.

As we understand it, that part of the executive order of the President of the United States with which we are concerned here reads as follows:

### Executive order.

"The Executive Order of Jan. 17, 1873, is hereby amended by the addition of the following paragraph:

" 'In order that they may more efficiently function in the enforcement of the National Prohibition Act, any state, county or municipal officer may be appointed, at a nominal rate of compensation, as prohibition officer of the Treasury Department to enforce the provisions of the National Prohibition Act and acts supplemental thereto, in states and territories, except in those states having constitutional or statutory provisions against state officers holding offices under the Federal Government.'    CALVIN COOLIDGE.

"The White House, May 8, 1926."

The provisions of our Constitution, section 2 of article XII, are as follows:

"Sect. 2. Incompatible offices. No member of Congress from this State, nor any person holding or exercising any office or appointment of trust or profit under the United States, shall at the same time hold or exercise any office in this State to which a salary, fees or perquisites shall be attached. The general assembly may by law declare what offices are incompatible."

It is perfectly plain, therefore, that the sheriff of any county of Pennsylvania cannot hold any appointment of trust or profit under any executive order of the President of the United States and still continue to function as sheriff, nor could he be compelled to abandon the one and accept the other; hence, it follows that, so far as the sheriff of this county is concerned, the executive order aforesaid has no greater force or effect than if it had never been made, for even if the sheriff desires to resign as sheriff, he would not be eligible under the executive order, as that order only permits the appointment of state, county or municipal officers.

As to his rights, he is entitled to his office, under the act of assembly, for four years and the fees and emoluments thereof, provided he shall so long well behave himself in office. As to his status, he is required to have attained the age of twenty-one years and be a citizen of the State, and he must reside in the county for which he is chosen. He can hold no other office, nor can he practice as an attorney-at-law in any court of law or equity; he cannot become bail nor execute process in any suit in which he is interested, even though he be not a party to the record; he cannot purchase property at any sale by virtue of execution in his hands, and, if such purchase be made, it is void; and he is ineligible to succeed himself, although he may succeed his successor. Before he enters upon the duties of the office, he is required to take and file the constitutional oath of office and execute a bond for the faithful performance of the duties thereof. His office terminates by expiration, death, resignation to the Governor, removal from office, ceasing to be a resident of the county, or upon the conviction of an infamous crime or any offence

violating his oath of office. His acceptance of another office, the duties of which are incompatible with the office of sheriff, vacates his office as sheriff.

As to his duties, it is the duty of the sheriff to keep an office in the place in the county where the courts are held, to preserve the peace within his bailiwick or county, and to this end he is the first man within the county and may apprehend and commit to prison all persons who break the peace, or attempt to break the peace, within his view, or he may bind them over on a recognizance to keep the peace. He is bound *ex officio* to pursue and take all traitors, murderers, felons and rioters, but he is not bound to pursue petty offenders or *ex officio* ferret out misdemeanors, this probably for the reason, among others, that while at common law the sheriff had authority to arrest without a warrant any person who committed a breach of the peace in his presence or within his view, nevertheless, he was not authorized to arrest without a warrant where a breach of the peace was merely threatened, or where it had not been fully committed, or after an affray was over, nor could he arrest upon a suspicion that a misdemeanor had been committed; hence, the opinion generally prevalent that a sheriff has a right to arrest for such misdemeanors as violation of the liquor traffic, in slot-machine cases, and the like, without a warrant is erroneous, unless the violation takes place within his view. This is especially true as to the violation of the liquor law in the Counties of Erie, Luzerne, Susquehanna, Pike and Crawford, for the reason that the duty is especially imposed upon the constables of the several cities, boroughs, wards and townships of those counties to make diligent search for all persons who shall, either directly or indirectly, be engaged in the sale of liquor, wines or other strong drinks, and make quarterly returns thereof, under oath, to the Court of Quarter Sessions of the proper counties, and it is the duty of the court to make diligent inquiries of the constables of the manner and fidelity with which they have attended to and discharged these requirements enjoined upon them. The sheriff formerly had the keeping of the county jail (which is now changed by act of assembly) and must still defend it against all rioters, and for this, as well as for all other purposes in the execution of his duties, he may command the inhabitants of the county to assist him. This is called *posse commitatis*, and this summons every person over fifteen years of age is bound to obey under pain of fine or imprisonment.

In his ministerial capacity he is bound to be in attendance upon the courts, to execute within his county all process that issues from the courts of justice except where he is a party. He summons and returns the jury and carries into effect the judgment of the court. In criminal cases, he arrests and imprisons, returns the jury, has custody of the prisoners for executing the sentence of the court upon them, no matter what that sentence may be. He has no power or authority outside his own county, except when he is commanded by writ of *habeas corpus* to carry a prisoner out of his county, and then, if he conveys him through several counties, the prisoner is technically in the custody of each of the sheriffs in the counties through which he passes. To assist him in the discharge of his various duties he may appoint an undersheriff and as many special deputies as the public service may require to discharge the ordinary ministerial duties of the office. At common law, he is the officer to whom all process ought to be directed, and he cannot be passed by without cause. It is the settled principle of the common law that every man's house is his castle and fortress, as well for defence as for repose. Accordingly, in the service of civil process, the sheriff may not break open the outer door of a dwelling-house; he must await his opportunity to enter peaceably, but once lawfully in, he may go from one room to another and forcibly open

any inner door, chest, trunk, or other place where property is kept, to make a levy. In the execution of criminal process he may, after demanding admittance, break the outer door of the dwelling-house or any other enclosure.

These are some of the primary rights and duties which attach to the sheriff in his official capacity. There are many others, but most of them apply to some particular proceedings, are defined by statute and may be referred to in any of the digests of Pennsylvania law. However, the crux of the sheriff's inquiry here being his rights and duties under the executive order of May 8, 1926, of the President of the United States, and as to that it is clear that, so long as the petitioner continues as sheriff, he is debarred under the Constitution of Pennsylvania from holding or exercising any office of trust or profit under the Federal Government; and should he resign as sheriff, he would then be ineligible under the executive order of the President of the United States, for the reason that he would not then be a state, county or municipal officer. It follows, therefore, that the Federal Government has no jurisdiction whatever over the local sheriff, and that neither can the local sheriff assume any of the functions of a Federal officer.